# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### WESTERN DIVISION

**LAL BHATIA # 97562-011**                                                                 **PLAINTIFF**

*OCT 17 2013*

*DEPUTY*

**VERSUS.**                    **CIVIL ACTION NO.** ___5:13cv199-DCB-MTP___

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY**
**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES**
**BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT**
**and DOES 1-50**                                                    **DEFENDANTS**

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

(1)     This action is brought under the Due Process; Separation of Powers; Equal Protection

doctrines of the United States Constitution; Privacy Act of 1974, portions of which are codified at 5

U.S.C. § 552a ("Privacy Act")  and 42 U.S.C. § 1981; for damages and to compel Defendants'

Department of Homeland Security ("DHS"); United States Citizenship and Immigration Services

("CIS"); Bureau of Immigration and Customs Enforcement ("ICE"); and DOES 1-50, (collectively

"Defendants") to maintain all records that are used by Defendants in making any determination

regarding Plaintiff Lal Bhatia, ("Plaintiff" and/or "Bhatia") with accuracy, relevance, timeliness, and

completeness as is reasonably necessary to ensure fairness to Bhatia in that determination. Despite

Bhatia's requests, DHS, CIS, ICE and others, in violation of including, but not limited to, 6 C.F.R. §§

5.21, 5.26 and 5.34(e), ("non-discretionary accuracy and disclosure regulations"), knowingly and

willfully fail to maintain their records concerning Bhatia with such accuracy, relevance, timeliness, and

completeness as is necessary to assure fairness in DHS, CIS, ICE and DOES 1-50s' determinations

related to and concerning Bhatia. Consequently, DHS, CIS, ICE and DOES 1-50s' determinations

regarding Bhatia continues to be that which are adverse to Bhatia.

1

## JURISDICTION

(2)      Plaintiff brings this action under 5 U.S.C. §§ 552a(g)(1)(A), (B), (C), (D); 6 C.F.R. §§

5.21, 5.26 and 5.34(e) and invokes the Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2202;

and 5 U.S.C. § 702; as well as the Due Process; Separation of Powers; Equal Protection doctrines of the

United States Constitution and 42 U.S.C. § 1981; Because he seeks declaratory and injunctory relief,

Plaintiff also relies on Rule 57 of the Federal Rules of Civil Procedure.

(3)      The Court is empowered under 5 U.S.C. §§ 552a(g)(1)(A), (B), (C) and (D) to grant the

relief requested. This Court is further empowered to declare the rights and other legal relations of the

parties herein under 28 U.S.C. §§ 2201 and 2202, as this case involves an actual controversy within the

Court's jurisdiction.

## VENUE

(4)      Venue is proper in this District pursuant to 5 U.S.C. § 552a(g)(1).

## PARTIES

(5)      Plaintiff, Lal Bhatia, ICE A-75012956, is a permanent resident. As a result of the

conviction in *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-

04-40071-CW and CR-05-00334-SBA, is presently a federal prisoner, BOP Reg. # 97562-011. Based

on DHS, CIS, ICE and/or DOES 1-50s' continuous maintenance of its records in violation of including,

but not limited to, 6 C.F.R. § 5.34(e), Bhatia continues to be adversely classified with a Public Safety

Factor ("PSF") of Deportable Alien,[1] and therefore is presently incarcerated at the Adams County

---

1  A PSF is "relevant factual information regarding the inmate's current offense, sentence, criminal
history or institutional behavior that requires additional security measures be employed to ensure
safety and protection to the public." *See* Bureau of Prisons, Program Statement, P5100.08, Chapter
5, p. 8. A PSF requires increased security measures to ensure protection of the public. *Id.* at p. 4.
There are nine PSFs which are applied to inmates who are not appropriate for placement at an
institution which would permit inmate access to the community (*i.e.* Minimum Security). *Id.* The
application of a PSF overrides security point scores to ensure the appropriate security level is
assigned to an inmate, based on his or her demonstrated current or prior behavior. A PSF of
Deportable Alien is applied to inmates that have a possibility of deportation. *Id.* at p. 11. With a PSF

Correctional Center located in Natchez, Mississippi, ("ACCC"). [2]

(6)     Defendant, United States Department of Homeland Security, ("DHS") is an agency as defined under 5 U.S.C. § 552a(a)(1), established by the Executive Branch of the United States within the meaning of 5 U.S.C. § 101 and through its Secretary, responsible, with some limited exceptions, with administration and enforcement of, including, but not limited to, Federal Immigration and Naturalization laws. Pub.L. No. 104-208, 110 Stat. 3009, 3009-554 (1996), codified at 8 U.S.C. § 1103.

(7)     Defendant, United States Citizenship and Immigration Services, ("CIS") is an agency as defined under 5 U.S.C. § 552a(a)(1) and a division of the United States Department of Homeland Security. CIS is responsible for adjudicating naturalization and other applications. 8 U.S.C. § 1446(a)-(c).  DHS, whose Secretary has the "sole authority" to naturalize persons as United States citizens, has established regulations governing the naturalization process. 8 C.F.R. § 335.1 *et seq.*

(8)     Defendant, United States Bureau of Immigration and Customs Enforcement, ("ICE") is an agency as defined under 5 U.S.C. § 552a(a)(1) and a division of the United States Department of Homeland Security. Through the Assistant Secretary of the Bureau of Border Security, [3]  and the Director of Immigration and Customs Enforcement are responsible with some limited exceptions, with administration and enforcement of, including, but not limited to, the full range of immigration and customs laws within the interior of the United States.

(9)     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is

---

of Deportable Alien, an inmate cannot be designated to a facility with a security classification below a Low, nor eligible to participate in the RRC program.

2  ACCC is a private facility that is owned and operated by Corrections Corporation of America. Adams County contracts with the Bureau of Prisons and houses low security deportable inmates.

3  Bureau of Border Security was changed to Bureau of Immigration and Customs Enforcement by Reorganization Plan Modification for the Department of Homeland Security, eff. Mar. 1, 2003, H. Doc. No. 108-32, 108th Congress, 1st Session, set out as a note under 6 U.S.C.A. § 542.

informed and believes and thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that the Plaintiff's damages as alleged herein were proximately caused by such Defendants.

(10)     At all times mentioned herein, a number of the Defendants herein are Executive Branch agencies as defined in 5 U.S.C. § 552a(a)(10); a source agency or other unknown agency, who were at all times acting with the consent and scope of such agency; a recipient agency; or a non-federal agency. Each of the Defendants were at all times acting with the consent and scope of such agency, recipient agency, non-federal agency or source agency. Further, the acts of each Defendant was committed as an agent for each of the remaining Defendants and ratified by said remaining Defendants.

## STATEMENT OF FACTS

(11)     On December 5, 2012, Bhatia requested Defendant United States Citizenship and Immigration Services, National Records Center, P.O. Box 648018, Lee's Summit, MO 64064-8010, ("CIS"), pursuant to Freedom of Information and Privacy Acts to provide access to any and all records pertaining to Bhatia in the files of the Department of Homeland Security. Upon receipt of the request, CIS assigned a request # NRC2012109984.

(12)     On April 4, 2013, Bhatia received communication related to the aforesaid Request from CIS. The communication was signed by Director, FOIA Operations, Jill A. Eggleston, who identified 1569 pages responsive to the request. She provided 1501 pages in its entirety, and 7 pages were released in part. Additionally, the agency referred 6 pages to Federal Bureau of Prisons and 50 pages to Federal Bureau of Investigation ("FBI") in their entirety for their direct response to Bhatia. ("April 4, 2013 disclosure").

(13)     On May 28, 2013, Bhatia filed an Appeal to the CIS - FOIA/PA – Appeals Office, who upon receipt, designated an appeal # APP 2013000837.

(14)     The appeal in relevant part sought an explanation from CIS for not including in the April

4

4, disclosure the following:

(a) unlawful Immigration Detainer and related information issued on or about April 29, 2008, by Mr. Dan Good IEA, U.S. Immigration and Customs Enforcement, 800 Truxton Ave., Bakersfield, California 93301 was missing;

(b) Communications and related information dated on or about June 29, 2011, from Bhatia to and from the Office of the Chief Counsel, Department of Homeland Security to Bhatia was missing;

(c) Communications and related information dated on or about August 16, 2011 from Bhatia to and from the Office of the Chief Counsel, Department of Homeland Security to Bhatia was missing;

(d) Communications and related information dated on or about September 14, 2011, from Bhatia to and from the Disclosure Officer, Department of Homeland Security, Privacy Office in Washington, D.C., to Bhatia (DHS/OS/PRIV 11-259) was missing;

(e) Communications and related information dated on or about April 27, 2012, from Bhatia to and from the Disclosure Officer, Department of Homeland Security, Privacy Office in Washington, D.C., to Bhatia (DHS/OS/PRIV 12-0394) was missing;

(f) Communications and related information dated on or about May 25, 2012, from Bhatia to and from Disclosure Officer, Department of Homeland Security, Privacy Office in Washington, D.C., to Bhatia (DHS/OS/PRIV 12-0394) was missing.

(15)   Bhatia further averred:

Based on the aforesaid discrepancies, Director Eggleston's April 4, 2013 response does not meet the legal obligation to ensure that the agency correctly processed my request as * * * (2) [it did not] include the aforesaid documents and related communications from me to and from the Department of Homeland Security to me...

For example, when the agency based on its April 29, 2008, unlawful Immigration Detainer issued by Mr. Dan Good, IEA, U.S. Immigration and Customs Enforcement, 800 Truxton Ave., Bakersfield, California 93301, states in relevant part: "investigation has been initialized to determine whether this person is subject to removal from the United States," and the aforesaid April 4, 2013, Director Eggleston's response includes some documents related to the said "investigation," but omits other material documents that establishes that I should not be subjected to any removal proceedings from the United States, therefore the unlawful Immigration Detainer is improvidently issued and must be rescinded, it is a violation of the Privacy Act as well as due process principles, to omit and ignore the aforesaid documents and communications.

(16)   By failing to provide the aforesaid documents and/or communications, CIS, just as DHS

5

and ICE, in essence, failed to produce documents related to Mon Wig's [4] engineering of the trumped-up investigation that led to Bhatia's convictions to conceal Mon Wig's specific money laundering crimes using the services of BCCI. [5] Despite making several requests, DHS, CIS, and/or ICE while continuing to maintain their unlawful – inaccurate, irrelevant, untimely and incomplete – records, including the unlawful Immigration Detainer related to Bhatia's convictions, have refused to comply with Bhatia's amendment, access, and maintenance requests.

(17)     On July 9, 2013, without acknowledging nor providing a legitimate basis to omit and ignore the aforesaid documents and related communications, the CIS - Appeals Office rejected the appeal stating in relevant part:

"The National Records Center processed all records it could locate based on the information you provided with your original request. If there is additional information you can provide that would assist in a search, you may wish to submit a new FOIA request."

(18)     On June 4, 2013, Defendant, ICE- Privacy Office at 500, 12th Street, S.W. Stop 5009, Washington, D.C. 20536-5009, and on July 29, 2013, ICE – FOIA/Privacy Act Officers, Ms. Catrina Pavlik-Keenan and Mr. Ryan Law at 500, 12th Street, S.W. Stop 5009, Washington, D.C. 20536-5009, received Bhatia's certified mail communications of May 30, 2013 and July 18, 2013 requesting

---

4   "Mon Wig" refers to Manmohan K. Wig, who operates in the United States under one of his alter-egos, Wig Properties, LLC., Tax Identification No., 91-1789152, located at 4811, 134th Place, S.E., Bellevue, Washington, 98006.

5   BCCI Holdings (Luxembourg), S.A., incorporated under the laws of Luxembourg; Bank of Credit and Commerce International, S.A., incorporated under the laws of Luxembourg; Bank of Credit and Commerce International (Overseas) Limited, ("BCCI Overseas"), incorporated under the laws of the Cayman Islands; and International Credit and Investment Company (Overseas) Limited, incorporated under the laws of the Cayman Islands.  The four entities are collectively referred to as "BCCI."

"Mon Wig's specific money laundering crimes using the services of BCCI" include,(a) Mon Wig's $ 200 million laundered through BCCI's Numbered Account # 01007647; (b) Mon Wig's $ 325 Million laundered through Attock Oil; (c) Mon Wig's $ 105 million laundered through Coffee, Inc.; (d) Wig's $ 700 million laundered using BCCI's Deposit and Loan scheme; (e) Mon Wig's $ 125 million laundered through Capcom Inc.; (f) Mon Wig's $ 900 million laundered to Abu Dhabi and Dubai, just before BCCI was shut down by numerous regulatory bodies for laundering drug money and other crimes; and, (g) Mon Wig's personal bankers at BCCI are convicted for laundering drug money. (Collectively, "Mon Wig's specific money laundering crimes using the services of BCCI").

Defendant ICE to amend its inaccurate, irrelevant, untimely and incomplete records and consequently

rescind ICE's improvidently issued unlawful Immigration Detainer and provide access to specific

records pertaining to Bhatia.

    (19)    On August 16, 2013, via letter, reference no.: 2013FOIA29916, Defendant ICE

acknowledged that Bhatia had requested Defendant ICE for information and documents pursuant to the

Freedom of Information Act ("FOIA") and communicated that ICE – FOIA/Privacy Office would be

responding to the said FOIA Request in the near future, but omitted the access, amendment and

maintenance requests based on the unrefuted details, [6] including, but not limited to, the August 3, 2012,

acknowledgment by the prosecution in *United States v. Bhatia*, United States District Court, Northern

---

6  The following were attached to the aforesaid May 30, 2013 communication and referenced in the
July 18, 2013 communications:

| | |
|---|---|
| Attachment 1; | May 30, 2013; Certificate of Identity; |
| Attachment 2; | April 4, 2008; Detainer Action Letter; |
| Attachment 3; | April 29, 2008; Immigration Detainer; |
| Attachment 4; | Sept. 7, 2010; Petition to Rescind the "Improvidently Issued" Immigration Detainer; Form G-28 Notice of Appearance, and Priority Mail Confirmation; |
| Attachment 5; | June 15, 2011; Request for Information, Documents and/or Testimony From United States Department of Homeland Security Pursuant to 6 C.F.R. § 5.41 *et seq.*; |
| Attachment 6; | June 29, 2011; Letter from Office of General Counsel, U.S. Department of Homeland Security; |
| Attachment 7; | July 9, 2011; Letter to Office of General Counsel, U.S. Department of Homeland Security; |
| Attachment 8; | Aug. 16, 2011; Letter from Office of General Counsel, U.S. Department of Homeland Security |
| Attachment 9; | Sept. 14, 2011; Letter (DHS/OS/PRIV 11-259) form the Disclosure Officer, Department of Homeland Security, Privacy Office in Washington, D.C., |
| Attachment 10; | April 2, 2012; Letter to Department of Homeland Security, Privacy Office in Washington, D.C. |
| Attachment 11; | April 27, 2012; Letter (DHS/OS/PRIV 12-0394) form the Disclosure Officer, Department of Homeland Security, Privacy Office in Washington, D.C. |
| Attachment 12; | May 5, 2012; Letter to Department of Homeland Security, Privacy Office in Washington, D.C |
| Attachment 13; | May 25, 2012; Letter (DHS/OS/PRIV 12-0394) form the Disclosure Officer, Department of Homeland Security, Privacy Office in Washington, D.C. |
| Attachment 14; | April 4, 2013; Letter (NRC2012109984) from United States Citizenship and Immigration Services; |
| Attachment 15; | May 28, 2013; Appeal of April 4, 2013 determination & certificate of mailing. |

California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA, that Mon Wig engineered the

fabricated charges that led to Bhatia's convictions in order to conceal Mon Wig's specific money

laundering crimes using the services of BCCI. Consequently, the facts and circumstances that led to,

the fraud and money laundering convictions, losses and/or victims forming the basis for ICE to

commence its investigation as evidenced by the continuous maintenance of the unlawful Immigration

Detainer cannot be attributed to Bhatia.

(20)    On September 18, 2013, via certified mail, Bhatia informed Defendant ICE of the

aforesaid access, amendment and maintenance request discrepancies. Copies, via certified mail, were

also received on or around September 18, 2013 by: (a) Mr. Ryan Law, FOIA Officer, FOIA Requester

Service Center Contact; United States Immigration and Customs Enforcement, Freedom of Information

Act & Privacy Act Office, 500, 12th Street, S.W. Stop 5009, Washington, D.C. 20536-5009; (b)

Principal Legal Advisor, Office of the Principal Legal Advisor, Department of Homeland Security, U.S.

Immigration and Customs Enforcement, 425 I. Street, N.W., Washington, D.C. 20536; and, (c)

Director, Department of Homeland Security, Enforcement and Removal Operations, New Orleans Field

Office, 1250 Poydras Suite 325, New Orleans, LA 70113.

(21)    Defendant ICE and others were again requested to acknowledge within 10-days, Bhatia's

aforesaid access, amendment and maintenance requests, and: (i) amend its inaccurate, irrelevant,

untimely and incomplete records; (ii) confirm that it's inaccurate, irrelevant, untimely and incomplete

records, including, but not limited to the unlawful Immigration Detainer has been corrected/rescinded;

or, in the alternative, (iii) to provide access to Bhatia information and documents – as previously

requested, (attachments ## 5, 7, 10, 12, and 15 to the May 30, 2013 request) [*see supra* fn. 6] [7]

---

7  Request 1:    Information related to Mon Wig's BCCI Account Number 01007647
    Request 2:    Information related to Mon Wig's Camari Corporation, a Netherlands Antilles
                  Corporation, Loan of $ 200 Million to Country of Suriname, NE South America;
    Request 3:    Information related to Loan from BCCI for Mon Wig's Attock Oil in exchange for
                  crude oil, to the Government of Nigeria

8

– related, including, but not limited to, Mon Wig's engineering of the trumped-up investigation that led to Bhatia's convictions to conceal Mon Wig's specific money laundering crimes using the services of BCCI.

(22)   Just as DHS, CIS, and others, ICE was also informed that continuing to maintain their records by not contradicting the falsehoods and engineering of the trumped-up convictions and misconduct by Mon Wig collides with fundamental constitutional, legal, statutory, non-statutory laws and moral precepts of fundamental fairness. DHS, CIS, and/or ICE were also reminded that they, too, just as the prosecution and others in *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA, have also not contradicted that the circumstances and facts that led to the fraud and money laundering convictions, losses and/or victims were based on unreliable, inaccurate, incomplete and grossly mischareterized facts (*supra* fn. 6 # 4).

| | |
|---|---|
| Request 4: | Information related to Loan by BCCI to Mon Wig's Coffee Inc.; |
| Request 5: | Information related to Bank of New York, (hereafter, "BONY"), Account Numbers, 019054-500, 8109803155, 8900054840, 018089-500 |
| Request 6: | Information related to Security Pacific Corporation (hereafter, "SPC"), Account Numbers, 0500701, 04020101, 04011002, 0501101, 05009001, 05012001, 60775041, 60775049 |
| Request 7: | Information related to American Express Bank, (hereafter, "AMEX"), Account Numbers, 1509800, 1605800, 703876, 703876-2 |
| Request 8: | Information related to Mon Wig's Zandi Holdings, Limited |
| Request 9: | Information related to Mon Wig's Connaught Place Investments Limited; |
| Request 10: | Information related to Mon Wig's KBM Investments Corporation |
| Request 11: | Information related to Mon Wig's Hirondel Trust |
| Request 12: | Information related to Mon Wig's Rosemond Holdings Limited |
| Request 13: | Information related to Mon Wig's 700 Million deposited in bulk cash, from 1982 through 1986, at the BCCI – Tampa and BCCI – Los Angles Branches |
| Request 14: | Information related to Mon Wig's Maram Trading Corporation; Khalil Investment & Trading Corporation; Kintara Universal Company Limited |
| Request 15: | Information related to Mon Wig's$ 900 Million in bulk cash deposited from January through April 1986, in BCCI and shipped in safe-deposit boxes to Abu Dhabi in BCCI's Boeing 737 jet |
| Request 16: | Information related to Saiyid Mohammad Swaleah Naqvi, BCCI's Chief Ex.Officer |
| Request 17: | Information related to Syed Ziauddin Ali Akbar, Head, BCCI's Treasury Department, |
| Request 18: | Information related to Amjad Awan, BCCI – Miami Bank Officer |
| Request 19: | Information related to Akbar A. Bilgrami, Head, Latin America Business |
| Request 20: | Information related to Nazir Chinoy, Head – BCCI – Europe and North America. |

(23)    Specifically, just as DHS, CIS and others, ICE, too, was informed that, notwithstanding the amendment and maintenance claims, providing access to documents and information related to Mon Wig's specific money laundering activities would also establish that the circumstances, facts and events that gave rise to the fabricated fraud and money laundering charges, victims, and/or losses resulting in the indictments, convictions and/or sentences in *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA were purely politically motivated, political offenses and cannot be attributed to Bhatia. Regardless, DHS, CIS, ICE and others have yet to answer the following:

    i.   Where are the documents related to Mon Wig's specific money laundering crimes using the services of BCCI?

    ii.   Which members of the BCCI's *nom de guerre* Allied Group conducted questionable financial transactions, that compelled Mon Wig to go through the scheme to divert the FBI's investigation from Mon Wig and the Allied Group to Bhatia?

    iii.   Where are the incriminating documents showing Mon Wig engineered the trumped-up investigation that led to Bhatia's conviction, in order to conceal and protect Mon Wig's specific money laundering crimes?

    iv.   Who suppressed them?

    v.   Which investigation could "open a can of worms" that could result in a lot of answering to do, therefore it was in everyone's best interest that Bhatia plead guilty, so that many of the questions regarding the Allied Group/BCCI would be buried and the members of the Allied Group/BCCI, for Bhatia's loyalty, would, in turn, "take care" of Bhatia?

    vi.   Which of Mon Wig's contacts in the Department of Justice (DOJ), suggested that Bhatia should take the plea offer or face a second indictment, as the FBI were interested in the source of funds for the allocated projects and Mon Wig's DOJ contacts did not think it would be appropriate to expose the members of the Allied Group?

    vii.   Where are the notes memorializing, including, in exchange for assisting Wig conceal his crimes and diverting the FBI's investigation of Wig to Bhatia, one prosecutor became a California State Court judge and another got a high-paying position in a prestigious law firm?

    viii.   How could the prosecutor and FBI Agent, inform Wig that if any representative of the Allied Group testified they would reopen the investigation of the Allied Group?

ix. Why was Mon Wig privy to confidential grand jury information and details concerning the second indictment, as even though the second indictment was issued under seal, because Bhatia did not plead guilty in CR-04-40071-CW, ("case 1") Mon Wig represented that the second indictment would entail the IH and CO transactions by WTII and SNL, before the indictment was issued?

x. How could the prosecutor and FBI Agent, knowingly permit Wig create the fictitious financials and other documents for the Allied Group and Sherwin and Noble, that was ultimately found on Bhatia's computers?

xi. Whether there is good reason to believe that whenever AUSA Corrigan and FBI Agent Berry discovered that Mon Wig engineered the trumped-up investigation that led to Bhatia's conviction, in order to conceal Mon Wig's specific money laundering crimes, they allowed it to go uncorrected.

xii. How much time would Mon Wig and his cohorts' face if the aforesaid crimes were pursued?

(24)    It was reiterated:

i. The unlawful Immigration Detainer was improvidently issued in violation of 8 CFR § 287.7(c) and its continuous maintenance is in violation of, including, but not limited to, 6 C.F.R. §§ 5.21 *et seq.*, 5.26 *et seq.*, and 5.34(e);

ii. That Bhatia has been and continues to be a person of good moral character and should be eligible for immigration and naturalization benefits;

iii. By failing to comply with their non-discretionary accuracy and disclosure provisions and not responding to the aforesaid, DHS, CIS, ICE and DOES 1-50s' actions and determinations continue to be adverse to Bhatia. Defendants have continued to violate the most fundamental constitutional, legal, statutory, non-statutory laws and moral precepts of fundamental fairness.

### FIRST CLAIM OF RELIEF
### VIOLATION OF CONSTITUTIONAL RIGHTS:
### ACTIONS AND DETERMINATIONS BY IGNORING STATUTORY AND COMMON LAW
### CONSTRAINTS VIOLATES THE DUE PROCESS CLAUSE OF THE
### UNITED STATES CONSTITUTION

(25)    Each and every and all of the foregoing allegations and paragraphs are incorporated

herein as though fully set forth at length.

(26)    An actual controversy has arisen and now exists between Bhatia, DHS, CIS, ICE and

DOES 1-50. Based on a PSF of Deportable Alien classification, Bhatia is, including, but not limited to:

11

(1) prohibited from being placed in a minimum security prison; [8] (2) prohibited from participating in a Residential Reentry Program (RRC); [9] (3) prohibited from being transferred to a facility closer to the family; (4) prohibited from being eligible for early release; (5) prohibited from establishing a good moral character finding to seek immigration and naturalization benefits; (6) would have to endure the possibility of deportation and/or removal proceedings commenced by DHS, CIS, and/or ICE based on inaccurate, irrelevant, untimely and incomplete records; and, (7) would be forced to remain in prison beyond expiration of his term while awaiting deportation proceedings, based on DHS, CIS, and/or ICEs' inaccurate, irrelevant, untimely and incomplete records, as evidenced by the continuous maintenance of the unlawful immigration detainer.

(27)     Bhatia continues to be detained based on a PSF of Deportable Alien classification, without due process of law. Defendants, in light of facts, circumstances and evidence conclusively establishing that Mon Wig engineered the trumped-up investigations that led to Bhatia's convictions in *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA, to conceal Mon Wig's specific money laundering crimes, have not made decisions regarding the inaccurate, irrelevant, untimely and incomplete records, as evidenced by the continuous maintenance of the unlawful immigration detainer, in a neutral and impartial manner. The failure of Defendants to provide a natural decision-maker to review the inaccurate, irrelevant, untimely and incomplete records, as evidenced by the continuous maintenance of the unlawful immigration detainer, by disregarding, including, but not limited to, the prosecution's recent acknowledgment and conclusively established by Mon Wig, that Mon Wig engineered the trumped-up investigations that led

---

8   Bureau of Prisons' institutions are classified into one of five security levels: Minimum, Low, Medium, High, and Administrative based on the level of security and staff supervision the institution is able to provide.

9   RRCs, more commonly known as "halfway houses," are minimally secure community based facilities in which certain eligible BOP inmates may be placed upto the last year of their terms of imprisonment to facilitate their transition into the community upon completion of their terms of imprisonment.

to Bhatia's convictions to conceal Mon Wig's specific money laundering crimes, violates Mr. Bhatia's right to procedural due process under the Fifth Amendment of the United States Constitution.

(28)   Defendants and DOES 1-50, did not reconcile, contradict nor respond to Bhatia's numerous requests justifying that the continuing maintenance of its unlawful records, including the unlawful immigration detainer is based on inaccurate, irrelevant, untimely and incomplete records. Consequently, Bhatia continues to suffer legal wrongs because of Defendants and DOES 1-50s' arbitrary, capricious, wanton and an abuse of discretion actions and determinations are not in accordance with the Due Process Clause of the United States Constitution.

(29)   Defendants' and DOES 1-50s' intentional, knowing and willful actions and determinations are contrary to their constitutional rights, power, privileges, or immunities afforded to them. In fact, Defendants and DOES 1-50s' actions and determinations are in excess of their statutory jurisdiction, authority and/or limitations and are *malum in se*.

(30)   No adequate justification exists for Defendants' arbitrary scheme embodied in Defendants' customs and practices, which has resulted in the denial of Plaintiff's rights, privileges and benefits and is therefore invalid under including, but not limited to, the Fifth Amendment of the United States Constitution.

(31)   Bhatia has exhausted his administrative remedies with respect to this claim.

**SECOND CLAIM OF RELIEF**
**VIOLATION OF CONSTITUTIONAL RIGHTS:**
**CONTINUOUS MAINTENANCE OF INACCURATE, IRRELEVANT, UNTIMELY AND**
**INCOMPLETE RECORDS IN VIOLATION**
**OF SEPARATION OF POWERS**

(32)   Each and every and all of the foregoing allegations and paragraphs are incorporated herein as though fully set forth at length.

(33)   DHS, CIS, ICE and/or DOES 1-50s' continuous maintenance of inaccurate, irrelevant, untimely and incomplete records, including, but not limited to the unlawful Immigration Detainer

continues to adversely affect Bhatia. By all measures is ultra vires and void, because it is an

unconstitutional exercise of legislative and judicial powers by the Executive Branch. The Constitution

vests all legislative powers in Congress, and requires, at a bare minimum, that unlawful conduct be

defined in advance, either by positive legislation, or by reference to a recognized statutory law and/or

regulation.

(34)     Article I of the Constitution grants Congress, not the Executive, the power "To define

and punish ... Offenses against the Laws of Nations" and "To constitute Tribunals inferior to the

Supreme Court." Accordingly, absent circumstances so exigent to demonstrably rule out resort to

Congress, that lawmaking body and not the Executive Branch must be the authorizing agent to

maintain records, including, but not limited to, immigration detainers based on inaccurate, irrelevant,

untimely and incomplete records, as well as the body that defines the offenses for which an accused

will be answerable based on those inaccurate, irrelevant, untimely and incomplete records. No act of

Congress grants the Executive Branch, including, DHS, CIS, and/or ICE, under the circumstances

presented here, the authority to violate the Constitution, statutes, or applicable regulations, because

Executive Branch officials do not possess discretion to violate Constitutional rights, federal statutes or

regulations.

(35)     In addition to enabling the unlawful exercise of legislative powers, the continuous

maintenance of DHS, CIS, and/or ICEs' inaccurate, irrelevant, untimely and incomplete records,

including, but not limited to the unlawful Immigration Detainer, by ignoring Bhatia's numerous

amendment, access and maintenance requests, DHS, CIS, and/or ICEs' violation of the Constitution,

federal statutes and/or regulations, also purports to circumscribe the jurisdiction of the federal courts in

violation of Art. 1 § 9 and Art. III § 2 of the Constitution by denying Bhatia, who is adversely affected

by the unlawful records, including the issuance and continuous maintenance of the unlawful

Immigration Detainer, access to any remedy. While enforcement of immigration laws requires unity

14

and dispatch, the process of justice requires more than DHS, CIS, and/or ICE through the Executive

Office of Immigration Review ("EOIR") serving at the pleasure of the Attorney General by continuing

to make adverse determination pertaining to Bhatia based on unlawful records.

(36)   Here, Defendants', in essence, exercise legislative, executive, judicial powers and

unfettered discretion with respect to whether Bhatia should be subjected to removal and/or deportation

proceedings by failing to "investigate," reconcile, contradict, nor respond to the underlying facts

establishing that the continuous maintenance of its records, as evidenced by the immigration detainer,

based on which Defendants continue to make determinations, are unlawful and adverse to Bhatia. Such

blending of functions in one branch of the Government is the objectionable thing which the draftsmen

of the Constitution endeavored to prevent by providing for the separation of governmental powers.

(37)   To allow DHS, CIS, ICE and/or others to continue to proceed in this manner is to

dismantle the jurisdiction of federal courts, redesigning the very architecture of American justice, and

to succumb to an executive unilateralism decried by both the Founders and twentieth-century courts,

and all who came in between. Defendants are under a clear non-discretionary duty to obey the

Constitution and its foundational command of the separation of powers.

(38)   Bhatia has exhausted his administrative remedies with respect to this claim.

### THIRD CLAIM OF RELIEF
### VIOLATION OF CONSTITUTIONAL RIGHTS:
### ADJUDICATION OF THE INACCURATE, IRRELEVANT, UNTIMELY AND INCOMPLETE
### RECORDS BEFORE A DISTINCTLY LESS PROTECTIVE AND INFERIOR BRAND OF
### ADJUDICATION IN VIOLATION
### OF EQUAL PROTECTION

(39)   Each and every and all of the foregoing allegations and paragraphs are incorporated

herein as though fully set forth at length.

(40)   An actual controversy has arisen and now exists between Bhatia, DHS, CIS, ICE and

DOES 1-50, in that, whether the continuing maintenance of Defendants' unlawful records, as evidenced

by the continuous maintenance of the unlawful immigration detainer violates Bhatia's right to equal

protection of the laws of the United States and runs afoul of the very purpose of the Equal Protection

Clause of the United States Constitution.

(41)    The continuous maintenance of the unlawful records reverts back to an antebellum

concept of fundamental rights, one in which Bhatia is singled out for lesser forms of justice than others

subjected to immigration detainers and may be removed based on accurate, relevant, timely and

complete records. While Defendants are afforded considerable latitude in areas such as enforcement of

immigration laws, under the Constitution there is little or no room for Government by approximation,

when it has put Bhatia on one side to face the possibility of lifetime banishment or the other of a crude

line that differentiates between individuals who are given access to fundamental protections of the

Constitution, including, a charging document based on accurate, relevant, timely and complete records;

removal proceedings based on accurate, relevant, timely and complete records, and those afforded

based only on a distinctly less protective and inferior brand of adjudication to litigate Defendants

continuous maintenance of their unlawful records.

(42)    To illustrate: Not only is the relief that Bhatia seeks in this action unavailable under the

Immigration and Nationality Act, nor would it be subject to a review by the United States Court of

Appeals, after the Board of Immigration Appeals have reviewed the decision of the Immigration Judge.

Moreover, even if the relief sought in this action were some how available in the Immigration Court

system, the Immigration Court system is distinctly less protective and inferior brand of adjudication. [10]

---

10 The plunging of the Immigration Court system has been well documented for years: Immigration
Reform and the Reorganization of Homeland Defense: *Hearing Before the Subcomm on
Immigration of the S.Comm on the Judiciary*, 107th Cong. 14-16, 70-98 (2002)(statement and written
submissions of Hon. Dana Marks Keener, President, National Association of Immigration Judges
("NAIJ")). Included in the NAIJ submission was a position paper entitled *An Independent
Immigration Court: An Idea Whose Time Has Come, Id* at 79-98 (written statement of Hon. Dana
Marks Keener and Hon. Denise Noonan Slavin, Vice President, National Association of Immigration
Judges). *See also* Hon. Dana  Leigh Marks, *Still a Legal "Cinderella"? Why the Immigration
Courts Remain an ill Treated Stepchild Today*, Fed. Law., March 2012, at 27 [hereinafter *Still a*

(43)     In 1983, the Executive Office for Immigration Review (EOIR) was created to provide

independence and insulation for the immigration courts from the enforcement functions of the

Immigration and Naturalization Service (INS). [11] During the comprehensive reform of immigration law

in 2002, virtually all immigration functions were consolidated within the DHS; however, the EOIR

remained at the Department of Justice (DOJ). [12] The issue of the proper placement and support for the

Immigration Court system was raised at that time, and the NAIJ argued then that it would be prudent to

allow additional independence that would be sufficient to cure the ills which persisted while the EOIR

was overshadowed by the INS' enforcement mission.

(44)     To be sure, over the past 60 years, the Immigration Courts, in theory, may have evolved

from a system internal to, and the mercy of, the prosecutors of the INS, to the status of an independent

component of the enforcement agency (the DOJ) to a component of an Executive Branch agency whose

primary mission is law enforcement.  [13] However, these gradual steps have proven inadequate to

---

*Legal "Cinderella"?*]; Hon. Denise Noonan Slavin and Hon. Dana Leigh Marks, *Conflicting roles of Immigration Judges: Do you want your case heard by a "Government Attorney" or by a "Judge"?*, 16 Benders Immigr. Bull. 1785, 1787-88 (2011) [hereinafter, *Conflicting roles of Immigration Judges*]; Executive Office for Citizenship, Refugees, Border Security, and International Law of the House Committee On the Judiciary, 111th Cong. 26-39, 53-61 (2010)(testimony and written statement of Hon. Dana Leigh Marks, President of National Association of Immigration Judges), available at http://judiciary.house.gov/hearing/printers/111[th]/111-111_56955.pdf; Hon. Dana Leigh Marks, *An Urgent Priority; Why Congress Should Establish and Article I Immigration Court*, 13 Bender's Immigr. Bull. 3, 9 & n. 39 (2008) [hereinafter, "*An Urgent Priority*"], available at http://law.psu.edu/file/Urgent%20Priority.pdf.

11 Board of Immigration Appeals; *Immigration Review Function*; Editorial Amendments, 48 Fed. Reg. 8,056 (Feb. 25, 1983) (codified at 8 C.F.R. § 1003.0); *see also* Comm'n on Immigration, AM. Bar Ass'n, *Reforming the Immigration system: Proposals to promote independence, fairness, efficiency, and professionalism in the adjudication of removal cases* 2-6 (2010) [hereinafter, *Reforming the Immigration System*]; Sidney B. Rawitz, *From Wong Yang Sung to Black Robes*, 65 Interpreter Releases 453, 458-59 (1988).

12 Homeland Security Act of 2002 (has), Pub. L.No. 107-296, § 1101(a), 116 Stat. 2135, 2273 (2002).

13  The DOJ mission statement is as follows; "To enforce the law and defend the interest of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans." U.S Dept Of Justice,http://www.justice.gov/about/about.html (last visited March 3, 2013). See also, *Reforming The Immigration System*, supra note 3, at 2-6 to 2-7; Rawitz, supra note 3, at 453-59.

safeguard true independence and quality decision – making an Article I Immigration Court is the answer. [14]

(45)   Further, despite repeated calls for resources, the Immigration Courts have been operating for years in a resource starved environment. [15] History shows a chronic lack of correlation between allocations for increased enforcement actions by the DHS, despite the fact that they generate larger dockets for the Immigration Courts. Long-term planning for Immigration Court growth has been either absent or ineffective. In the April 2009 Omnibus Appropriations Act (Public Law No. 111-8), Congress recognized that there has been a lack of a consistent, principled methodology to address the needs of the Immigration Courts. Funds were allocated to the National Academy of Sciences (NAS) to develop a method to create defensible fiscal linkages between the DOJ and the DHS. Despite this provision, and a 2011 NAS Report – *Budgeting for Immigration Enforcement- A Path to Better Enforcement* – no discernible results have been forthcoming. Even though, the NAS Report contains advice and invaluable insights for policy makers.

(46)   As a component of the DOJ, the Immigration Courts remain housed in an executive agency with a prosecutorial mission that is frequently at odds with the goal of impartial adjudication. A stark example of the incongruity is the fact that illegal, politicized hiring of Immigration Judges occurred subsequent to the last major step to reform the Immigration Courts in 2002. [16]

---

14 Comm'n on Immigration and Refugee Policy, *U.S Immigration Policy and the National Interests*; Final report and recommendations of the select commission on Immigration and refugee policy with supplemental views  by the commissioners (1981).
15 *Still a legal "Cinderella"?* supra note 2, at 27-28; *Reforming The Immigration System*, supra note 3, at 2-16 to 2-18, *Assembly Line Injustice*, supra note 7, at 10-11; *An Urgent Priority*, supra note 2 at 14.
16 *Reforming the Immigration System*, supra note 3, at 2-10, 2-16; Appleseed, *Assembly Line Injustice: Blueprint to Reform America's Immigration Courts* 7 (2009) ["*Assembly Line Injustice*"]; *An Urgent Priority*, supra note 2, at 9; Office Of  Prof'l Responsibility & Office of the Inspector Gen., U.S. Dep't of Justice, *An Investigation of allegations of politicized hiring by Monica Goodling and other staff in the Office of the Attorney General* 69-124 (2008), available at http://www.justice.gov/oig/special/s0807/final.pdf.

(47)    Moreover, Immigration Judges struggle with an average caseload unmatched by any U.S. Court system. Tasked with applying a body of law compared most often to tax law in its complexity, Immigration Judges carry an average docket of more than 1500 cases.[17] For perspective, the  average caseload of a U.S district court judge is 440.[18] Moreover, despite these crushing dockets, Immigration Judges lack staff support, conducting their proceedings with the assistance of only ¼ a judicial law clerk's time, without bailiffs or court reporters.[19] Perhaps most challenging of all, 60% of respondents are unrepresented by counsel, a figure which rises to 85% when only detained respondents are counted.[20]

(48)    Despite the fact that DOJ does not control the flow of cases into the immigration court system, it has become a serious impediment to the effective functioning of the courts as the DOJ has repeatedly failed to advance their most essential need: independence. The DOJ has contributed to selling the Immigration Courts short rather than defending their independence or enhancing their stature. At every possible juncture, in rule making and policy announcements, the DOJ insists on reminding the public that Immigration Judges are merely attorneys employed by the Attorney General at will. This has serious and insidious repercussions. [21]

---

17 *Still a legal "Cinderella"?* supra note 2, at 27; Editorial, *Immigration Court Overload*, L.A Times, Nov. 14, 2012.

18 *Immigration Court Overload*, supra note 9.

19 See, e.g. Transactional Records Access Clearing House (TRAC), Syracuse University, *Case Backlogs In Immigration Courts Expand, Resulting Wait Times Grow* (June 2009). http;//trac.syr.edu/immigration/reports/208/.

20 *Jailed without justice*, supra note 1... according to the EOIR, between October 1, 2006, and September 20, 2007, approximately 84% of completed detained immigration court proceedings involved unrepresented individuals. Nina Siulc, Zhifen Cheng, Arnold Son, & Olga Byrne, Vera Inst. Of Justice, Report summary, *Improving Efficiency And Promoting Justice In The Immigration System; Lessons From The Legal Orientation Program* (May 2008). see also New York Immigrant representation study, *Accessing Justice: The Availability And Adequacy Of Counsel In Immigration Proceedings* (2011).

21 INA § 101(b)(4); 8 U.S.C. §1101(b)(4); 8 C.F.R §1003.1 (A)(1); Exec. Office for immigration review, *Ethics And Professionalism Guide For IJ's* (2011). available at http://www.justice.gov/eoir/sibpages/IJConduct/EthicsandProfessionalismGuideforIJs.pdf (explicitly instructing Immigration Judges to comply with the standards of conduct applicable to all attorneys

(49)    Despite legislation passed over 15 years ago, Immigration Judges have no contempt authority because the DOJ lacks the political will to overrule the DHS's objections.[22] Immigration Judges' subpoenas go unenforced because U.S Attorneys will not pick sides between sibling agencies, essentially stacking the deck in favor of the DHS against private litigants. Issues of ex parte communications are hopelessly muddled, as both Immigration Judges and the DHS prosecutors who appear before them have the same client, the United States Government, according to DOJ ethics opinions.[23]

(50)    Exacerbating the situation, Immigration Judges face personal discipline when making good faith legal decisions because the DOJ acts on "complaints" from disgruntled parties when the appropriate recourse would be an appeal.[24] The basis of most of the complaints against Immigration Judges is the Immigration Judge's decision or how it was arrived at, not allegations of conflict of

---

in the Department of Justice): see also Office of Prof'l Responsibility & Office Of The Inspector General, U.S Dept of Justice, *An Investigation Of Allegations Of Politicized Hiring By Monica Goodling And Other Staff In The Office Of The Attorney General* 70 (2008), available at http://www.justice.gov/oig/special/s0807/final.pdf ("An immigration judge is an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review... All IJ's are career Schedule A appointees. Consequently, the civil service laws set forth at 5 U.S.C.§§ 2301 and 2302 apply to the appointments of IJ's" (internal citations and quotation marks omitted))

22 Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA)Pub L.No 104-208, § 304, 110 Stat. 3009, 3009-589(codified as amended at INA § 240(b)(1) (2007), 8 U.S.C § 1229a(b)(1); *Still a legal "Cinderella"?* supra note 2, at 30; conflicting roles of Immigration Judges, supra note 2, at 1791; Chief Immigration Judge Micheal Creppy *et al.*, *Court Exec. Dev. Program, Inst. For Court Mgmt., The United States Immigration Court In The 21ˢᵗ Century* 109 n.314(1999)

23 *Reforming the Immigration system*, supra note3 , at 6-5; *Still a Legal "Cinderella"?*, supra note 2, at 29; see also Codes of Conduct for the Immigration Judges and Board Members, 72 fed. Reg. 35,510,35,511(June 28, 2007) ("An immigration judge's communications with other employees of the Department of Justice shall not be considered ex parte communications unless those employees are witness in a pending or impending proceeding before the immigration judge and the communication involves that proceeding.")

24 Office Of Prof'l Responsibility, *A Guide For Immigration Judges On Investigations By The Office Of Professional Responsibility* (2006); U.S Gov't Accountability Office, G-06-771, Executive Office for Immigration Review *Caseload Performance Reporting Needs Improvement* 27-28 (2006), available at http://www.goa.gov/new.items/d06771.pdf. *see also Reforming The Immigration System*, *supra* note 3, at 2-14 to 2-15.

interest, personal gain or criminal activity by the judge. In addition, Immigration Judges are subject to

non-transparent performance review and disciplinary processes as DOJ employees. They can be

subjected to personal discipline for not meeting the administrative priorities to their supervisors and are

frequently placed in the untenable position of having to choose between risking their livelihood and

exercising their independent decision-making authority when deciding continuances.

(51)    Under the circumstances present here, if Defendants based on inaccurate, irrelevant,

untimely and incomplete records, as evidenced by the continuous maintenance of the unlawful

Immigration Detainer, would ever be permitted to take the step of shunting Bhatia into the aforesaid

procedure by rearranging burdens and benefits from which others are spared, they may do so only upon

a strict scrutiny showing that an actual compelling government interest abrogates the claim of lifetime

banishment based on inaccurate, irrelevant, untimely and incomplete records. This singling out of

Bhatia for such fundamental disfavor might be justified in rare circumstances, but it is hard to imagine

and, absent explicit Congressional action, impossible to assume that such circumstances are present in

Bhatia's case.

(52)    Thus, based on the aforesaid, the Immigration Court system's review of Bhatia's claims

will not only fail to be "strict" but, as shown, distinctly less protective and inferior brand of

adjudication that would barely qualify for "scrutiny."

(53)    Bhatia has exhausted his administrative remedies with respect to this claim.

### FOURTH CLAIM OF RELIEF
### PRIVACY ACT – AMENDMENT CLAIM (6 C.F.R. § 5.26 *et seq.*)

(54)    Each and every and all of the foregoing allegations and paragraphs are incorporated

herein as though fully set forth at length.

(55)    An actual controversy has arisen and now exists between Bhatia, DHS, CIS, ICE and

DOES 1-50, regarding their rights and legal relations with respect to each other in that Bhatia has a

21

statutory right under the Privacy Act, including, 5 U.S.C. §552a(g)(2)(A)-(B) and 6 CFR § 5.26 *et seq.*,

to compel Defendants to amend their records including, but not limited to, the unlawful Immigration

Detainer, to show:

> Based on the facts, circumstances and evidence, established in the records of the criminal
> courts, including, but not limited to, the August 3, 2012, acknowledgment by the prosecution in
> *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-
> 40071-CW and CR-05-00334-SBA, that as Mon Wig engineered the fabricated charges that led
> to Bhatia's investigation and convictions in order to conceal Mon Wig's specific money
> laundering crimes using the services of BCCI, the facts and circumstances that led to the fraud
> and money laundering convictions, losses and/or victims forming the basis for DHS, CIS,
> and/or ICE to commence its investigation as evidenced by the continuous maintenance of the
> unlawful Immigration Detainer, cannot be attributed to Bhatia.

(56)    Had DHS, CIS, and/or ICE responded pursuant to 6 CFR § 5.26 *et seq.*, and

subsequently amended their inaccurate, irrelevant, untimely and incomplete records, including, but not

limited to the unlawful Immigration Detainer, and accordingly rescinded the improvidently issued

unlawful Immigration Detainer by deeming Bhatia non-deportable. Bhatia's adverse classification of

PSF of Deportable alien by BOP would have been removed and Bhatia would have been entitled to,

including, but not limited to: (1) eligible to be placed in a minimum security prison;  (2) eligible to

participate in a Residential Reentry Program (RRC); (3) eligible to be placed in a facility closer to the

family; (4) eligible for the early release; (5) eligible for immigration and naturalization benefits based

on good moral character finding; (6) would not have to endure the possibility of any deportation or

removal proceedings commenced by DHS, CIS, and/or ICE based on the inaccurate, irrelevant,

untimely and incomplete records; and, (7) would not be forced to remain in prison beyond expiration of

his term while awaiting deportation proceedings.

(57)    Bhatia has exhausted his administrative remedies with respect to this claim.

## FIFTH CLAIM OF RELIEF
## PRIVACY ACT – ACCESS CLAIM (6 C.F.R. § 5.21 *et seq.*)

(58)    Each and every and all of the foregoing allegations and paragraphs are incorporated

herein as though fully set forth at length.

(59)   An actual controversy has arisen and now exists between Bhatia, DHS, CIS, ICE and

DOES 1-50, regarding their rights and legal relations with respect to each other in that Bhatia has a

statutory right under the Privacy Act, including, 5 U.S.C. §§ 552a(g)(1)(B), (g)(3)(A) and 6 CFR § 5.21

*et seq.*, to compel Defendants to provide access to the records that contradict facts and evidence related

to Mon Wig's engineering of the fabricated charges that led to Bhatia's investigation and convictions in

*United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-40071-

CW and CR-05-00334-SBA, in order to conceal Mon Wig's specific money laundering crimes using

the services of BCCI, forming the basis for Defendants to continue to make determinations adverse to

Bhatia based on unlawful records. Defendants have not responded to Bhatia's several requests, no legal

basis exists for Defendants' failure to comply with the provisions of  6 CFR § 5.21 *et seq.*, adversely

affecting Bhatia.

(60)   Defendants should be enjoined from withholding the requested records and ordered to

provide documents and information that contradict the facts and evidence establishing that Mon Wig

engineered the fabricated charges that led to Bhatia's investigation and convictions to conceal Mon

Wig's specific money laundering crimes using the services of BCCI, therefore the fraud and money

laundering convictions, losses and victims cannot be attributed to Bhatia. (*See supra* fn. 6 ## 4-13)

(61)   Bhatia has exhausted his administrative remedies with respect to this claim.

### SIXTH CLAIM OF RELIEF
### PRIVACY ACT – MAINTENANCE CLAIM (6 C.F.R. § 5.34(e))

(62)   Each and every and all of the foregoing allegations and paragraphs are incorporated

herein as though fully set forth at length.

(63)   An actual controversy has arisen and now exists between Bhatia, DHS, CIS, ICE and

DOES 1-50, regarding their rights and legal relations with respect to each other in that Bhatia has a

23

statutory right under the Privacy Act, including, 5 U.S.C. § 552a(g)(1)(C); (g)(4)(A) and 6 CFR § 5.34(e) to be assured that any and all records concerning Bhatia are maintained with accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to Bhatia's qualifications, character, rights, opportunities, or benefits that may be made on the basis of such records.

(64)     Defendants continue to maintain their records, as evidenced by the continuous maintenance of the unlawful Immigration Detainer, adversely affecting Bhatia, by not contradicting the evidence, facts, circumstances and events conclusively establishing that the prosecution in *United States v. Bhatia*, United States District Court, Northern California, Case Nos.: CR-04-40071-CW and CR-05-00334-SBA, was engineered by Mon Wig and others to conceal Mon Wig's specific money laundering activities using the services of BCCI. The facts and circumstances that led to the fraud and money laundering convictions, losses and/or victims forming the basis for DHS, CIS, and/or ICE to commence its investigation as evidenced by the continuous maintenance of the unlawful Immigration Detainer, cannot be attributed to Bhatia.

(65)     Bhatia has exhausted his administrative remedies with respect to this claim.

## SEVENTH CLAIM OF RELIEF
## KNOWINGLY AND WILLFULLY VIOLATING THE PRIVACY ACT AND THE REGULATIONS PROMULGATED

(66)     Each and every and all of the foregoing allegations and paragraphs are incorporated herein as though fully set forth at length.

(67)     An actual controversy has arisen and now exists between Bhatia, DHS, CIS, ICE and DOES 1-50, regarding their rights and legal relations with respect to each other in that Defendants have knowingly and willfully violated the provisions of the Privacy Act, including 6 C.F.R. §§ 5.21, 5.26 and 5.34(e).

(68)     DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records,

24

including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because since

September 10, 2010, DHS, CIS, and/or ICE have not contradicted the evidence, facts, circumstances

and events related to Mon Wig's engineering of the trumped-up investigation that led to Bhatia's

convictions to conceal Mon Wig's specific money laundering crimes using the services of BCCI. (*See*

*for eg. supra* fn. 6)

     (69)    DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records,

including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants

have not contradicted the evidence, facts, circumstances and events conclusively establishing that

members of the BCCI's *nom de guerre* Allied Group conducted questionable financial transactions, that

compelled Mon Wig to go through the scheme to divert the FBI's investigation from Mon Wig and the

Allied Group/BCCI to Bhatia.

     (70)    DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records,

including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants

have not contradicted the existence of incriminating documents showing Mon Wig engineered the

trumped-up investigation that led to Bhatia's conviction, in order to conceal and protect Mon Wig's

specific money laundering crimes.

     (71)    DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records,

including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants

have continued conceal the names of individuals who suppressed the aforesaid incriminating

documents.

     (72)    DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records,

including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants

have not contradicted that providing access to the incriminating documents would "open a can of

worms" and result in a lot of answering to do, therefore, the individuals who suppressed the

incriminating documents suggested that it was in everyone's best interest that Bhatia, in *United States v. Bhatia*, United States District Court, Northern California, Case No., CR-04-40071-CW plead guilty, so that many of the questions regarding the Allied Group/BCCIs' malfeasance would be buried and the members of the Allied Group/BCCI, for Bhatia's loyalty, would, in turn, "take care" of Bhatia.

(73)   DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that Mon Wig's contacts in the Department of Justice (DOJ), suggested that Bhatia should take the plea offer or face a second indictment, as the FBI were interested in the source of funds for the allocated projects and Mon Wig's DOJ contacts did not think it would be appropriate to expose the members of the Allied Group/BCCI.

(74)   DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that in exchange for assisting Mon Wig conceal his crimes and diverting the FBI's investigation of Wig to Bhatia, one prosecutor became a California State Court judge and another got a high-paying position in a prestigious law firm.

(75)   DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have continued to ignore that the prosecutor and FBI Agent, in *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA, informed Wig that if any representative of the Allied Group/BCCI testified they would reopen the investigation of the Allied Group/BCCI.

(76)   DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that Mon Wig was privy to confidential grand jury information and details

concerning the second indictment, as even though the second indictment was issued under seal, because Bhatia did not plead guilty in CR-04-40071-CW, ("case 1") Mon Wig represented that the second indictment in CR-05-00334-SBA ("case 2") would entail the IH and CO transactions by WTII and SNL, before the indictment was issued.

(77)   DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that the prosecutor and FBI Agent, knowingly permitted Wig create the fictitious financials and other documents for the Allied Group and Sherwin and Noble, that was ultimately found on Bhatia's computers as Wig had sent them to Bhatia.

(78)   DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that whenever the prosecution in *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA discovered that Mon Wig engineered the trumped-up investigation that led to Bhatia's conviction, in order to conceal Mon Wig's specific money laundering crimes, they allowed it to go uncorrected.

(79)   No legal basis exists for DHS, CIS, and/or ICEs' failure to comply with, including, but not limited to, their non-discretionary accuracy and disclosure regulations. Had DHS, CIS, and/or ICE complied with the provisions of the non-discretionary 6 C.F.R. §§ 5.21, 5.26 and 5.34(e), and subsequently amended their inaccurate, irrelevant, untimely and incomplete records, including, but not limited to the unlawful Immigration Detainer, and accordingly rescinded the improvidently issued unlawful Immigration Detainer by deeming Bhatia non-deportable. Bhatia's adverse classification of PSF of Deportable alien by BOP would have been removed and Bhatia would have been entitled to, including, but not limited to: (1) eligible to be placed in a minimum security prison; (2) eligible to participate in a Residential Reentry Program (RRC); (3) eligible to be placed in a facility closer to the

family; (4) eligible for the early release; (5) eligible for immigration and naturalization benefits based on a good moral character finding; (6) would not have to endure the possibility of any deportation or removal proceedings commenced by DHS, CIS, and/or ICE based on the inaccurate, irrelevant, untimely and incomplete records; and, (7) would not be forced to remain in prison beyond expiration of his term while awaiting deportation proceedings.

(80)    Even though DHS, CIS, and/or ICE have been aware of their inaccurate, irrelevant, untimely and incomplete records, they continue to violate the non-discretionary accuracy and disclosure regulations promulgated pursuant to the Privacy Act. As a result, Defendants cannot assure fairness in any determination relating to Bhatia's qualifications, character, rights, opportunities, or benefits to Bhatia that may be made on the basis of such record, adversely affecting Bhatia.

(81)    As DHS, CIS, and/or ICE continue to act in an intentional and willful manner, United States is liable for actual damages sustained by Bhatia as a result of DHS, CIS, and/or ICEs' refusal and failure to comply with DHS, CIS, and/or ICEs' non-discretionary 6 C.F.R. §§ 5.21; 5.26 and 5.34(e) regulations.

(82)    The acts and omissions of DHS, CIS, and/or ICE, as shown herein, constitute negligent, intentional and willful breach of the Constitution, laws, and/or treaties of the United States, adversely effecting Bhatia of the rights, privileges and benefits that he would otherwise be entitled to by Federal law.

(83)    As a direct, proximate and legal result of DHS, CIS, and/or ICEs' willful and intentional violation of the Constitution, laws, or treaties of the United States, Bhatia has and continues to sustain general and special damages in an amount which is within the jurisdiction of the Court, not yet fully ascertained, but in an amount according to the proof at the time of trial. Bhatia will seek leave to amend this Complaint to state the true amount when fully and finally ascertained or according to proof at the time of trial.

28

(84)    In intentionally and willfully violating the Constitution, laws, and/or treaties of the United States, Defendants have acted and continue to act with oppression, fraud and malice, with malicious intent and with substantial certainty that such conduct would continue to injure and damage Bhatia.

(85)    DHS, CIS, and/or ICEs' acts of willfully and intentionally, by failing to establish appropriate rules and safeguards, as evidenced by the continuous maintenance of the unlawful Immigration Detainer, is malicious, oppressive, despicable, and in conscious disregard of the Bhatia's rights, benefits and privileges and therefore Bhatia is entitled to and requests the imposition of exemplary damages in a sum sufficient to punish and deter Defendants and in an amount when fully and finally ascertained or according to proof at the time of trial.

(86)    Bhatia has exhausted his administrative remedies with respect to  this claim of relief.

## EIGHTH CLAIM OF RELIEF
## FOR INDEMNITY FOR CONTINUING VIOLATION OF
## NON-DISCRETIONARY ACCURACY AND DISCLOSURE REGULATIONS

(87)    Each and every and all of the foregoing allegations and paragraphs are incorporated herein as though fully set forth at length.

(88)    An actual controversy has arisen and now exists between Bhatia, DHS, CIS, ICE and DOES 1-50, regarding their rights and legal relations with respect to each other in that Bhatia claims and contends that, under the circumstances alleged here, if Bhatia would be subjected to, including, but not limited to, deportation and/or removal proceedings commenced by Defendants based on the said inaccurate, irrelevant, untimely and incomplete records and in violation of DHS, CIS, and/or ICEs' non-discretionary 6 C.F.R. §§ 5.21; 5.26 and 5.34(e) regulations, then any losses and damages that Bhatia would incur and continues to bear, as a consequence, would be based solely upon Defendants knowing concealment, cover-up, falsification of the August 3, 2012, acknowledgment by the prosecution in *United States v. Bhatia*, United States District Court, Northern California, Case Nos.,

CR-04-40071-CW and CR-05-00334-SBA, that as Mon Wig engineered the fabricated charges that led to Bhatia's investigation and convictions in order to conceal Mon Wig's specific money laundering crimes using the services of BCCI, the facts and circumstances that led to the fraud and money laundering convictions, losses and/or victims forming the basis for DHS, CIS, and/or ICE to issue the unlawful Immigration Detainer, cannot be attributed to Bhatia.

(89)   As a direct, proximate and legal result of DHS, CIS, and/or ICEs' willful and intentional violation the Constitution, laws, or treaties of the United States, Bhatia would continue to sustain general and special damages in an amount which is within the jurisdiction of the Court, not yet fully ascertained, but in an amount according to the proof at the time of trial. Bhatia will seek leave to amend this Complaint to state the true amount when fully and finally ascertained or according to proof at the time of trial.

(90)   Bhatia has exhausted his administrative remedies with respect to this claim of relief.

### NINTH CLAIM OF RELIEF
### DETENTION IN VIOLATION OF 42 U.S.C. § 1981

(91)   Each and every and all of the foregoing allegations and paragraphs are incorporated herein as though fully set forth at length.

(92)   An actual controversy has arisen and now exists between Bhatia, DHS, CIS, ICE and DOES 1-50 as Bhatia is, including, but not limited to: (1) prohibited from being placed in a minimum security prison;  (2) prohibited from participating in a Residential Reentry Program (RRC);  (3) prohibited from being transferred to a facility closer to the family; (4) prohibited from being eligible for early release; (5) prohibited from establishing a good moral character finding to seek immigration and naturalization benefits; (6) would have to endure the possibility of deportation and/or removal proceedings commenced by DHS, CIS, and/or ICE based on the said inaccurate, irrelevant, untimely and incomplete records; and, (7) would be forced to remain in prison beyond expiration of his term

while awaiting deportation proceedings, based on the authority of DHS, CIS, and/or ICEs' continuous

maintenance of their inaccurate, irrelevant, untimely and incomplete records, including, but not limited

to the unlawful immigration detainer which contravenes 42 U.S.C. § 1981.

(93)    That fundamental statutory provision guarantees equal rights for all persons to give

evidence, to receive equal benefit of all laws and proceedings for the security of persons, and to receive

like punishment. Bhatia is being unlawfully detained because he is being detained to face the

possibility of removal proceedings at ACCC based on the actions by the Defendants that itself is

unconstitutional.

(94)    Defendants and their officials are acting contrary to law, abusing their discretion and

acting outside the limits of their permissible discretion, and when official conduct extends beyond any

rational exercise of discretion, even though it is within the letter of the authority granted, Plaintiff is

afforded the appropriate judicial relief.

## PRAYER FOR RELIEF

WHEREFORE, Bhatia prays for judgment against DHS, CIS, and/or ICE as follows:

i.   For a Judicial determination of Plaintiff Lal Bhatia's and Defendants DHS, CIS, and/or

ICEs' legal rights and relations with respect to each other and for a declaration that

Defendants DHS, CIS, and/or ICE are liable for all the loss, damages, liability that has

arisen and continues to arise as a result of DHS, CIS, and/or ICEs' knowing

concealment, cover-up, falsification of, including, but not limited to, the August 3, 2012,

acknowledgment by the prosecution in *United States v. Bhatia*, United States District

Court, Northern California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA, that

as Mon Wig engineered the fabricated charges that led to Bhatia's investigation and

convictions in order to conceal Mon Wig's specific money laundering crimes using the

services of BCCI, the facts and circumstances that led to the fraud and money

31

laundering convictions, losses and/or victims forming the basis for DHS, CIS, and/or ICE to, including, but not limited to, issue the unlawful Immigration Detainer, cannot be attributed to Bhatia.

ii.  For a Judicial determination that DHS, CIS, and/or ICE have failed to maintain their records related to Bhatia with accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to Bhatia that may be made on the basis of such record, which results in an adverse determination to Bhatia;

iii.  For a Judicial determination that DHS, CIS, and/or ICEs' decision to continue to maintain the unlawful Immigration Detainer is arbitrary, capricious, inconsistent with ordinary fairness, including, the Constitution, laws, or treaties of the United States, DHS, CIS, and/or ICEs' non-discretionary 6 C.F.R. §§ 5.21; 5.26 and 5.34(e) regulations, and is null and void.

iv.  For a Judicial determination that DHS, CIS, and/or ICEs' decision to, under the circumstances as alleged herein, to commence removal proceedings would be arbitrary, capricious, inconsistent with ordinary fairness, including, the Constitution, laws, or treaties of the United States, DHS, CIS, and/or ICEs' non-discretionary 6 C.F.R. §§ 5.21; 5.26 and 5.34(e) regulations and null and void.

v.  For a Judicial determination that DHS, CIS, and/or ICEs' failure to maintain their records related to Bhatia with accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to Bhatia's qualifications, character, rights, opportunities, or benefits to Bhatia that may be made on the basis of such record, which results in an adverse determination to Bhatia, is unlawful;

vi.  For a Judicial determination by declaring that the actions of Defendants DHS, CIS,

and/or ICE are unlawful and in violation of 6 C.F.R. §§ 5.21, 5.26 and 5.34(e), because:

a.    DHS, CIS, and/or ICE continue to maintain their records, including, but not limited to, the unlawful Immigration Detainer, by not contradicting the evidence, facts, circumstances and events conclusively establishing that the prosecution in *United States v. Bhatia*, United States District Court, Northern California, Case Nos.: CR-04-40071-CW and CR-05-00334-SBA, was engineered by Mon Wig and others to conceal Mon Wig's specific money laundering activities using the services of BCCI. The facts and circumstances that led to the fraud and money laundering convictions, losses and/or victims forming the basis for DHS, CIS, and/or ICE to commence its investigation as evidenced by the continuous maintenance of the unlawful Immigration Detainer and may lead to subjecting Bhatia's to removal proceedings, cannot be attributed to Bhatia.

b.    DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because since September 10, 2010, Defendants have not contradicted the evidence, facts, circumstances and events related to Mon Wig's engineering of the trumped-up investigation that led to Bhatia's convictions to conceal Mon Wig's specific money laundering crimes using the services of BCCI.

c.    DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted the evidence, facts, circumstances and events conclusively establishing that members of the BCCI's *nom de guerre* Allied Group conducted questionable financial transactions, that

compelled Mon Wig to go through the scheme to divert the FBI's investigation from Mon Wig and the Allied Group/BCCI to Bhatia.

d.     DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that incriminating documents exist showing Mon Wig engineered the trumped-up investigation that led to Bhatia's conviction, in order to conceal and protect Mon Wig's specific money laundering crimes.

e.     DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants concealed the names of individuals who continue to suppress the aforesaid incriminating documents.

f.     DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that exposing the facts and circumstances of Mon Wig's specific money laundering crimes could "open a can of worms" and result in a lot of answering to do, therefore it was in everyone's best interest that Bhatia plead guilty, so that many of the questions regarding the Allied Group/BCCI would be buried and the members of Allied Group/BCCI, for Bhatia's loyalty, would, in turn, "take care" of Bhatia.

g.     DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have continued to ignore that Mon Wig's contacts in the Department of Justice (DOJ), suggested that Bhatia should take the plea offer

or face a second indictment, as the FBI were interested in the source of funds for the allocated projects and Mon Wig's DOJ contacts did not think it would be appropriate to expose the members of the Allied Group.

h.      DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that in exchange for assisting Wig conceal his crimes and diverting the FBI's investigation of Wig to Bhatia, one prosecutor became a California State Court judge and another got a high-paying position in a prestigious law firm.

i.      DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that the prosecutor and FBI Agent, in *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA, informed Wig that if any representative of the Allied Group testified they would reopen the investigation of the Allied Group/BCCI.

j.      DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have not contradicted that Mon Wig was privy to confidential grand jury information and details concerning the second indictment, as even though the second indictment was issued under seal, because Bhatia did not plead guilty in CR-04-40071-CW, ("case 1") Mon Wig represented that the second indictment (CR-05-00334-SBA) would entail the IH and CO transactions by WTII and SNL, before the indictment was issued.

35

k. DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have continued to ignore that the prosecutor and FBI Agent, knowingly permitted Wig create the fictitious financials and other documents for the Allied Group and Sherwin and Noble, that was ultimately found on Bhatia's computers as Wig had sent them to Bhatia.

l. DHS, CIS, and/or ICE, knowingly and willfully continue to maintain their records, including, the unlawful Immigration Detainer, in violation of 6 C.F.R. § 5.34(e), because Defendants have continued to ignore that whenever the prosecution in *United States v. Bhatia*, United States District Court, Northern California, Case Nos., CR-04-40071-CW and CR-05-00334-SBA, discovered that Mon Wig engineered the trumped-up investigation that led to Bhatia's convictions, in order to conceal Mon Wig's specific money laundering crimes, they allowed it to go uncorrected.

vii. For general, special and compensatory damages according to proof at trial, including those of economic and non-economic damages;

viii. For all pre-judgement interest to which Bhatia is entitled

ix. For costs for defending the knowing and willful maintenance of the material inaccurate and incomplete facts;

x. For costs, expenses and attorney fees;

xi. For exemplary and punitive damages in an amount according to the proof at trial, but sufficient to punish Defendants and deter them for the sake of example.

xii. For such other and further relief as the Court may deem just, equitable and proper under the circumstances.

## VERIFICATION

I am the Plaintiff in this action, I have read the above complaint and know its contents. The matters stated therein are true to my own knowledge and competent to testify on the matters stated, except as to those matters which are stated on information and belief and as to those matters I believe to be true. I declare under penalty of perjury that the aforesaid is true and correct.

October _07ᵗʰ_ 2013

Lal Bhatia, Plaintiff, *pro se*
Reg. No.: 97562-011
Adams County Correctional Center
P.O. Box 1600
Washington, MS 39190