IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

LAL BHATIA                                                                                           PLAINTIFF

v.                                                                          CIVIL ACTION NO. 5:13-cv-199-DCB-MTP

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, ET AL.                                                         DEFENDANTS

### REPORT AND RECOMMENDATIONS

THIS MATTER is before the Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [16] and Plaintiff's Motion for Summary Judgment [23]. Having considered the parties' submissions and the applicable law, the undersigned is of the opinion that Defendants' Motion [16] should be granted, Plaintiff's Motion [23] should be denied, and this action should be dismissed.

### BACKGROUND

Plaintiff is currently incarcerated at the Adams County Correctional Center in Natchez, Mississippi. On October 23, 2006, Plaintiff was sentenced by the United States District Court for the Northern District of California to a 48-month term of incarceration for "Mail Fraud" and "Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity." (Motion [16] Ex. B.) On September 7, 2011, Plaintiff was sentenced in the United States District Court for the Northern District of California to a 63-month term of incarceration for wire fraud and money laundering. ([16] Ex. C.)

On October 17, 2013, Plaintiff, proceeding *pro se*, filed his Complaint [1] against the United States Department of Homeland Security ("DHS"), the United States Citizenship and Immigration Services ("CIS"), and the Bureau of Immigration and Customs Enforcement

1

("ICE"). Plaintiff asserts causes of action pursuant to the Due Process Clause, Separation of Powers Doctrine, Equal Protection Clause, the Privacy Act, and 42 U.S.C. § 1981. Plaintiff alleges that Defendants have failed to maintain accurate records concerning Plaintiff.

On April 29, 2008, ICE issued an immigration detainer concerning Plaintiff. ([16] Ex. D.) The detainer serves as a notice to any agency or correctional facility with custody over Plaintiff that ICE has undertaken an investigation to determine whether Plaintiff is subject to removal from the United States. *Id*. The detainer also requests that the agency or facility notify ICE at least 30 days prior to Plaintiff's release and notify ICE in the event of Plaintiff's death or transfer to another institution. *Id*.

Plaintiff asserts that he was wrongfully convicted in the United States District Court for the Northern District of California. Plaintiff alleges that the convictions resulted from Manmohan "Mon" Wig's[1] "engineering of the trumped-up investigation that led to Bhatia's convictions to conceal Mon Wig's specific money laundering crimes . . . . " (Complaint [1] at 6.) Plaintiff argues that because of this "undisputed" fact, his convictions do not constitute deportable offenses. Plaintiff also argues that Defendants should amend their records to reflect that he is not deportable and rescind the immigration detainer. Plaintiff asserts that the allegedly erroneous detainer adversely affected determinations regarding his custody, security classifications, eligibility for early release, and other benefits.

---

[1] In his pleadings, Plaintiff provides scant information regarding Mon Wig. Plaintiff, however, has also filed a Petition for Writ of Habeas Corpus in this Court. *See Bhatia .v Holder*, 5:13-cv-74-DCB-MTP. In his habeas petition, Plaintiff explains that Mon Wig is his father-in-law's cousin and alleges that Won Wig, along with an FBI agent and assistant United States attorney, fabricated facts to mislead a grand jury to indict Plaintiff in order conceal Mon Wig's unlawful activities.

On May 30, 2013, Plaintiff sent a letter to the ICE Privacy Office and the ICE Freedom of Information Act ("FOIA") office requesting ICE to amend its records, rescind its immigration detainer, and provide him access to records. ([1] at 7; [16] Ex. E.)  The ICE FOIA office responded to Plaintiff's requests via two letters dated August 16, 2013. ([16] Ex. E.)  The ICE FOIA office acknowledge receipt of Plaintiff's letter and advised Plaintiff that DHS regulations, specifically 6 C.F.R. § 5.21(d), requires verification of identity, including full name, current address, date of birth, and place of birth. *Id*.  The letter also informed Plaintiff that "[b]ecause you have not provided this documentation, your request is not a proper FOIA/PA request, and we are unable to initiate searching for responsive records. *Id*.  If we do not receive your revised request within 10 business days from the date of this letter, we will assume that you no longer require the information requested, and your request will be administratively closed." *Id*.

By letter dated September 12, 2013, Plaintiff again requested amendment of his records. *Id*.  Defendants assert that Plaintiff again failed to include a verification of identity.  In a sworn declaration, Catrina Pavlik-Keenan, the FOIA Officer of the ICE FOIA office, states that on September 20, 2013, ICE FOIA closed Plaintiff's request due to Plaintiff's failure to provide a certification of identity. *Id*.[2]

On October 17, 2013, Plaintiff filed this action requesting the Court to (1) declare that Defendants have failed to properly maintain its records relating to Plaintiff; (2) order Defendants to amend its records related to his convictions; (3) rescind the immigration detainer against him; (4) enjoin Defendants from initiating removal proceedings; and (5) award damages for

---

[2] Plaintiff disputes Defendants' assertion and alleges that he provided a verification of identity with his original letter dated May 30, 2013.  This factual dispute, however, is immaterial to the conclusions and recommendations set forth herein.

Defendants' conduct. In sum, Plaintiff seeks to have his records reflect that Mon Wig, in order to conceal his money laundering crimes, engineered fabricated charges that led to Plaintiff's investigation and convictions.

Defendants' filed a Motion to Dismiss or, in the Alternative, for Summary Judgment [16] challenging Plaintiff's claims on the grounds that (1) Plaintiff failed to exhaust his administrative remedies; (2) the records Plaintiff seeks to amend are exempt under the Privacy Act; (3) Plaintiff failed to allege that Defendants' actions constitute willful or intentional conduct or that their actions caused Plaintiff harm; (4) Plaintiff may not attack his convictions via a Privacy Act claim; and (5) Plaintiff's constitutional claims are not viable. Plaintiff also filed a Motion for Summary Judgment [23]. Plaintiff's Motion for Summary Judgment argues that Plaintiff was wrongfully convicted and demands that Defendants amend their records to reflect that he was wrongfully convicted and, therefore, is not deportable.

## STANDARD

**Motion to Dismiss**

In considering a motion to dismiss under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K . Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) motion, a plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Although courts are generally confined to the pleadings on a motion to dismiss, courts may consider certain materials, including documents attached to the compliant, documents incorporated by reference in the compliant, and matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment. *Lone Star Fund V, L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

**Motion for Summary Judgment**

This Court may grant summary judgment only if, viewing the facts in a light most favorable to non-movant, the movant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the movant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985).  The existence of an issue of material fact is a question of law that the court must decide, and in making that decision, it must "draw inferences most favorable to the

party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id* at 712.  A party, however, "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation and citation omitted).

"When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment." *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998).  Nevertheless, a court may take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

## ANALYSIS

**Privacy Act**

The Privacy Act, 5 U.S.C. § 552a, "'safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used.'" *Jacobs v. National Drug Intelligence Center*, 423 F.3d 512, 515 (5th Cir. 2005) (quoting *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996))  The Act provides four causes of action: (1) for an agency's failure to amend an individual's records pursuant to his request; (2) for an agency's denial of access to an individual's records; (3) for an agency's failure to maintain an individual's records with accuracy, relevance, timeliness, and completeness; and (4) for an agency's failure to comply with other Privacy Act provisions, which has "an adverse effect on the individual." 5 U.S.C. § 552a(g)(1)(A)-(D).

Exemption

Defendants argue that Plaintiff's Privacy Act claims are subject to the exemptions promulgated by DHS. The Privacy Act permits an agency to promulgate rules to exempt any system of records within the agency from any part of the Act, except for specific subsections that are not at issue here, if the system of records is:

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of
>
> (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status;
>
> (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or
>
> (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C § 552a(j).

Immigration records, including immigration custody, detention information, and removal information, are covered by the Immigration and Enforcement Operational Records System of Records. 75 Fed. Reg. 23274 (May 3, 2010). Other immigration records, including those pertaining to arrests and related information about the individuals or entities suspected of violating laws and regulations enforced by ICE, are covered by the Search, Arrest, and Seizure Records System of Records. 73 Fed. Reg. 74732 (Dec. 9, 2008). Pursuant to these regulations, DHS has exempted portions of these systems of records from the notification, access, and

amendment procedures of the Privacy Act because they contain law enforcement and investigatory records. 75 Fed. Reg. 23274; 73 Fed. Reg. 74732.

According to Plaintiff, Defendants have violated 5 U.S.C. §§ 552a(d) and (e)(5) because his records do not reflect that he was wrongfully convicted or that Mon Wig engineered fabricated charges that led to Plaintiff's investigation and convictions. Thus, Plaintiff is seeking access to and amendment of records pertaining to a criminal investigation and conviction. The Privacy Act and regulations issued thereunder exempt the files at issue from the general rule that an individual may have access to, and can force the agency to correct, agency records. The Act does not afford Plaintiff any civil remedy based on the allegations that Defendants violated Sections 552a(d) and (e)(5). *Cf. Bhatia v. Office of the U.S. Attorney*, 2011 WL 1298763, at *6 (N.D. Cal. March 29, 2011) (holding that records sought from the United States Attorney's Office pertaining to a criminal investigation were exempt from the amendment and maintenance provisions of the Privacy Act); *Mitchell v. Bureau of Prisons*, 2005 WL 3275803, at *4 (D.D.C. Sept. 30, 2005) (holding that an allegedly false and inaccurate detainer maintained in the Bureau of Prisons Central Records System was exempt from the amendment provisions of the Privacy Act). Accordingly, Plaintiff, as a matter of law, has failed to state claims upon which relief can be granted.

Challenge to Convictions

Additionally, Plaintiff has improperly sought to use Privacy Act claims as a means to attack his underlying convictions. It is inappropriate for Plaintiff to litigate questions regarding the propriety of his convictions in a Privacy Act suit. "Courts have routinely disapproved of the use of the Privacy Act as a vehicle for collateral attacks on judicial or quasi-judicial

determinations recorded in agency records." *Walker v. U.S.*, 1998 WL 637360, at *14 (E.D. La Sept. 16, 1998). "The Privacy Act allows for the amendment of factual or historical errors," but is not a means to amend underlying judgments. *Castella v. Long*, 701 F.Supp. 578, 585 (N.D. Tex. 1988). Despite his arguments to the contrary, Plaintiff is attempting to collaterally attack the validity of his criminal convictions under the guise of Privacy Act claims. Plaintiff "has engaged in manipulative behavior in arguing at one point that he was merely seeking damages and then arguing at another point that his conviction is void. It is clear, however, that he is attempting to challenge his conviction." *See Derrow v. Bales*, 2007 WL 1511997, at *2 (E.D. Tex. May 22, 2007).

Plaintiff's Privacy Act claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Courts have extended the reasoning in *Heck* to a variety of cases in which a plaintiff has been convicted of a federal crime and later files a civil action which, if successful, would necessarily imply the invalidity of the plaintiff's conviction. *See, e.g.*, *White v. U.S. Probation Office*, 148 F.3d 1124, 1126 (D.C. Cir. 1998) (dismissing Privacy Act claim "[b]ecause a judgment in favor of White on his challenge to the legal conclusions in his presentence report would necessarily imply the invalidity of his sentence, which has not been invalidated in a prior proceeding").

Plaintiff asks this Court to determine that he was wrongfully convicted because Mon Wig engineered fabricated charges that led to Plaintiff's investigation and convictions. A favorable decision in this case would necessarily imply the invalidity of Plaintiff's convictions; thus Plaintiff must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. *Heck*, 512 U.S. at 486-87. Plaintiff has not shown that his convictions have been reversed, expunged, invalidated or otherwise called into question.

Accordingly, his claims should be dismissed.

**Constitutional Claims**

In addition to Privacy Act claims Plaintiff asserts constitutional claims, including claims under the Due Process Clause, Separation of Powers Doctrine, and Equal Protection Clause. These claims, however, are predicated on alleged violations of the Privacy Act. Therefore, the claims are foreclosed by the comprehensive remedial scheme of the Privacy Act. *See Wilson v. Libby*, 535 F.3d 697, 706 (D.C. Cir. 2008) (declining to create a *Bivens* remedy where "each Constitutional claim, whether pled in terms of privacy, property, due process, or the First Amendment, is a claim alleging damages . . . covered by the Privacy Act"); *Abuhouran v. Social Sec. Admin.*, 291 Fed. App'x 469, 472 (3rd Cir. 2008) (holding that "a *Bivens* action is improper when the claims asserted are 'encompassed within the remedial scheme of the Privacy Act.'") (citation omitted). Accordingly, as a matter of law, Plaintiff has failed to state a claim upon which relief can be granted and his claims should be dismissed.

Because Plaintiff, as a matter of law, has failed to state any claim upon which relief can be granted, this Court need not address whether Plaintiff exhausted his administrative remedies prior to filing this action. Additionally, Plaintiff is not entitled to summary judgment.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that Defendants' Motion to Dismiss [16] be GRANTED, Plaintiff's Motion for Summary Judgment [23] be DENIED, and that this action be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days

after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      THIS the 28th day of July, 2014.

                                        s/ Michael T. Parker
                                        United States Magistrate Judge